**IT IS ORDERED as set forth below:**

Date: June 21, 2023



_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF**: | ) | **CASE NUMBER** |
| | ) | |
| KEITH R CARRINGER, | ) | 20-68717-LRC |
| | ) | |
| Debtor. | ) | |
| | ) | |
| KEITH R CARRINGER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | IN PROCEEDINGS UNDER |
| STEVE HAMPTON, | ) | SUBCHAPTER V OF |
| | ) | CHAPTER 11 OF THE |
| Respondent. | ) | BANKRUPTCY CODE |

## ORDER

Before the Court is the Motion for Relief from Orders and Judgments of Contempt

1

(Doc. 315, the "Motion") filed by Steve Hampton ("Hampton"). The Motion seeks relief from three orders holding Hampton in contempt: one entered April 29, 2021 (Doc. 136, the "First Contempt Order"), another entered September 1, 2021 (Doc. 182, the "Second Contempt Order"), and the third entered September 30, 2021 (Doc. 206, the "Third Contempt Order") (collectively, the "Orders"). The Court entered judgments along with the First Contempt Order (Doc. 137, the "First Judgment") and the Second Contempt Order (Doc. 164, the "Second Judgment"). The Court heard oral argument on the Motion from Debtor and Hampton on January 12, 2023 (the "Hearing"). In support of his Motion, Hampton testified at the Hearing and attached to the Motion his sworn statement. (Motion, Exh. 1, "Hampton's Affidavit"). At the Hearing and after, Debtor expressed his opposition to the Motion. (*See* Doc. 337, the "Debtor's Brief").

*Background*

Debtor filed this case on August 5, 2020. Hampton was a practicing certified public accountant for over twenty years and worked for Debtor and Debtor's businesses prior to Debtor's filing but has remained unemployed since closing his business in or around January 2021. Hampton's Affidavit, ¶¶ 2, 5. He attributes his unemployment and closing his business "in large part" to the factual circumstances herein described. *Id*. at 5

For decades, Hampton has suffered mental and physical challenges. He was diagnosed HIV positive in 2001 and with major depressive disorder several years ago. *Id*., ¶¶ 6, 7. He also has a history of abusing methamphetamines and cocaine. Debtor's Brief,

2

5. In March 2020, he was admitted to the hospital for an overdose after "having trouble dealing with day-to-day life." Hampton's Affidavit, ¶ 8. The same month, he was raped in his home, but he did not report the attack to authorities. *Id*., ¶ 9 Between March and July 2020, Hampton changed the locks on his home "about 12 times" after it was broken into – serially – and various items were stolen. *Id*., ¶ 10. On January 15, 2021, when he came home to find his house broken into again, Hampton had "a breakdown." *Id*., ¶ 11. His friend took him to Ridgeview Institute, a mental health assistance facility, and Hampton was then transferred to Northside Hospital for "decreased responsiveness" before he was returned to Ridgeview under an "involuntary, psychiatric hold for suicidal ideations, paranoid delusions, and other psychiatric issues." *Id*. He was discharged on January 21, 2021. *Id*.

Hampton contracted COVID-19 twice in the past two years, and due to his HIV-positive status, his immune system is compromised. *Id*., ¶ 12. Thus, he was fearful of going to the hospital to get treated and "toughed it out at home" which "left [him] depleted of energy to the point [he] was not functional." *Id*. After he returned from Ridgeview in January 2021, Hampton suffered from symptoms he attributes to "long COVID." *Id*. He also believes that he was "poisoned at Northside Hospital." *Id*. During this time, he routinely experienced "severe fatigue, diarrhea, vision changes, memory loss, headaches, and confusion" and worsening depression. *Id*., ¶ 13. He struggled to complete daily tasks, such as cleaning and showering, and "became more irritable." *Id*. In February

2021, Hampton was arrested for damaging his neighbor's property, behavior, he says, "was … not like [him]." *Id.*

Shortly thereafter, on March 12, 2021, the Court entered an order requiring Hampton, in his role as former CPA to Debtor and Debtor's businesses, to produce various documents and be examined under Rule 2004 by Debtor's counsel (Doc. 115). A subpoena was issued the same day (Doc. 117). After "numerous requests" and having rebuffed Debtor's counsel, Hampton did not turn over requested documents or make himself available for examination. On April 7, 2021, Debtor moved for an order to hold Hampton in contempt (Doc. 125 at Par. 4, "Debtor's First Motion for Contempt"). The Debtor recounted in part:

> On April 5, 2021, Debtor's counsel received a phone call from Mr. Hampton while he was at lunch. When counsel returned Mr. Hampton's call later that afternoon, Mr. Hampton acknowledged that he had received "a bunch of stuff from you and some of it's valid and some invalid, a bunch of garbage" and asked what counsel needed. When counsel told Mr. Hampton that he needed documents and a date for his examination, Mr. Hampton told him to "f--k off," imitated the sound of a dial tone, laughed, and hung up the call.

*Id.*, ¶ 13. After Hampton failed to appear at the hearing on Debtor's First Motion for Contempt on April 28, 2021, the Court entered the First Contempt Order.

Unbeknownst to Debtor or the Court until the filing of the Motion, in May 2021, Hampton's car, which included his work laptop and cell phone, was stolen, and he reached his "breaking point." Hampton's Affidavit, ¶ 15. He attempted suicide twice in 2021, once in May and once in August, but did not tell anyone of either attempt until late March

4

2022. *Id*. In August of 2021, Hampton's work email account, the one he used to communicate with Debtor and Debtor's businesses, was hacked, and despite contacting AT&T and "several IT professionals" along with filing a complaint with the FBI, Hampton still lacks access to this email account. *Id*., ¶ 16.

In August 2021, the Court entered another order of contempt (as amended by the Second Order of Contempt), which, in part, directed the United States Marshal Service to incarcerate Hampton until such time as he complied with Debtor's discovery requests. On August 13, 2021, Hampton called Debtor's counsel to inform him that he was willing to sit for an examination and to provide requested documents. *Id*., ¶ 24. He sent various documents to Debtor's counsel the next day, and he appeared on September 13, 2021, for his examination. *Id*., ¶ 25. However, after he became "exhausted and confused" and thought "[Debtor's counsel] was trying to trick [him]," Hampton asserted his Fifth Amendment privilege, thus stopping the examination. *Id*. The same day, the Court ordered Hampton to produce requested documents to Debtor's counsel by September 16, 2021. *Id*. Hampton complied, but only in part, providing Debtor's counsel with "a large box of responsive documents as well as some documents stored on Dropbox," but he "did not produce any [requested] emails." Debtor's Brief, at 4.

On September 20, 2021, the Court again ordered Hampton to sit for his continued examination on September 28, 2021, at 9 a.m. and produce other requested documents before the examination date. (Doc. 196). But on September 28, 2021, Hampton did not

5

appear, and the Court entered its Third Contempt Order two days later. The Third Contempt Order states in part:

> [After he pled the Fifth Amendment,] [t]he Court […] held a hearing on September 13, 2021 to address Mr. Hampton's concerns. At the hearing, the Court directed Mr. Hampton to produce any additional responsive documents in his possession, custody or control to Debtor's counsel on or before September 16, 2021. The Court also directed counsel for Debtor to determine after review of the produced documents whether a continued 2004 examination would be necessary and file a status report on or before September 17, 2021. Mr. Hampton informed the Court that he would attend any further 2004 examinations, and the Court explicitly told Mr. Hampton that if he did not produce documents or attend another 2004 examination it would lead to his incarceration for contempt of court.

The Third Contempt Order goes on to direct United States Marshals to incarcerate Hampton until such time as he complied with discovery requests. Nothing else was filed concerning this matter until Hampton filed the Motion nearly a year later.

In the interim silence, Hampton insists that he was continuing to suffer from health problems. He moved in with his mother in March 2022 after he "was not able to care for [himself]," and he was shortly thereafter diagnosed with nickel poisoning. Hampton's Affidavit, ¶ 17. Still, at the Hearing and in support of his Motion, "Hampton testified in detail about his alleged psychiatric issues" but "did not offer expert testimony … about his medical issues or his alleged inability to comply with the Court's orders." Debtor's Brief, at 5. Hampton concedes his actions before the filing of the Motion were "unprofessional" and apologizes. Hampton Affidavit, ¶ 31. He notes that he "did not get the jobs [he] held or build the CPA practice [he] buil[t] by behaving in such a manner." *Id*. Hampton, who

6

acted *pro se* until the filing of this Motion, contends that his neglect of the Orders is excusable and suggests that his health issues contributed to the delay in his cooperation.

*Analysis*

Federal Rule of Civil Procedure 60(b)(1)[1] provides in part that "[o]n motion and just terms, the court may relieve a party … from a final judgment [or] order for … excusable neglect." "[T]he determination of what constitutes excusable neglect is an equitable one, taking into account the totality of the circumstances surrounding the party's omission." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 743 (11th Cir. 2017). In evaluating the totality of the circumstances, courts look to four factors: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). Notably, in weighing these factors, the Court in *Pioneer* "held that excusable neglect encompasses situations of negligence within the defaulting party's control and placed primary importance on the absence of prejudice and the interests of efficient judicial administration." *Safari Programs, Inc.*, 686 F. App'x at 744 (internal citations omitted). The trial court has wide discretion as to whether a movant has met this standard. *Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 169 (1st Cir. 2016) (internal quotations and

---

[1] Rule 60 is made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 9024.

citations omitted).

Indeed, although Hampton neglected to respond to Debtor's discovery requests for months and should have notified Debtor and this Court about circumstances surrounding the delay, the Court finds Hampton's neglect excusable within the meaning of Rule 60(b)(1).[2] Hampton argues that "despite knowing the requirements of the Court [O]rders [his] attention was focused on his health." Motion, at 15. In addition to experiencing a series of physical and mental health problems, Hampton lost access to his work email and computer, which the Court assumes included many of the documents Debtor sought. Coupled with the fact that Hampton remained *pro se* until the filing of the Motion, the Court finds that these reasons justify the delay.

Each of the Orders were entered to coerce Hampton to comply with Debtor's discovery requests. According to Debtor's counsel, Hampton has at last complied. Specifically, Debtor notes that "[i]t appears that Hampton has finally made a good faith

---

[2] Hampton makes arguments under both Rule (b)(1) and (b)(6), but such provisions are mutually exclusive. *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). Thus, because the Court finds Rule 60(b)(1) applicable, Rule 60(b)(6) is not. *See Vonsclobohm v. Cnty. of Los Angeles*, No. 218CV04527JFWADS, 2019 WL 4879180, at *5 (C.D. Cal. Oct. 3, 2019); *see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986) ("[A] court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)."); *D.R.T.G. Builders, L.L.C. v. Occupational Safety & Health Rev. Comm'n*, 26 F.4th 306, 313 (5th Cir. 2022) ("Where the claim 'falls squarely within the mistake or inadvertence prong of Rule 60(b)(1)' it cannot be alternatively brought under Rule 60(b)(6). DRTG argues that because the delay was beyond its control, Rule 60(b)(6) applies. This is the same argument undergirding the relief DRTG sought under Rule 60(b)(1). As DRTG has not alleged a separate basis for relief under Rule 60(b)(6), we affirm the Commission's denial of relief under Rule 60(b)(6)."). Further, the Court, having considered the evidence presented, does not find that Hampton's failure to appear for the hearings held in this case were the result of "an extraordinary situation which cannot fairly or logically be classified as mere 'neglect' on his part," such that Rule 60(b)(6), rather than Rule 60(b)(1), would apply. *Klapprott v. United States*, 335 U.S. 601, 613, 69 S. Ct. 384, 389, 93 L. Ed. 266 (1949).

attempt to produce responsive documents, and there is no further need for the Court to coerce his compliance." Debtor's Brief, at 5. Indeed, the Court believes that Hampton's retaining counsel and meaningfully prosecuting this Motion while providing Debtor with responsive documents speak to his good-faith effort to ameliorate the delay. Thus, aside from vacating the First and Second Judgments for attorney's fees and sanctions, vacating the Orders would have no prejudicial effect on Debtor whatsoever.

That said, Rule 60(c)(1) makes clear that a motion pursuant to Rule 60(b)(1) "must be made … no more than a year after the entry of the judgment or order or the date of the proceeding." Hampton did not file his Motion until September 27, 2022. The Court entered the First and Second Contempt Orders on April 29, 2021, and September 1, 2021, respectively. Therefore, notwithstanding the excusable nature of his neglect, Hampton is time-barred from relief as to the First and Second Contempt Orders. *See Ackermann v. U.S.*, 340 U.S. 193, 197 (1950) ("A motion for relief because of excusable neglect as provided in Rule 60(b)(1) must, by the rule's terms, be made not more than one year after the judgment was entered.") Unfortunately, there is no basis on which to vacate the First and Second Contempt Orders and the First and Second Judgments.

As to the Third Contempt Order, the Court will grant Hampton's request. The Third Contempt Order directs Hampton to comply with Debtor's discovery requests and directs the United States Marshals Service to arrest Hampton unless and until proof has been provided that Hampton has complied with said requests. On February 3, 2023,

9

Debtor's counsel filed an affidavit (Doc. 334, "Mr. Klehr's Affidavit"), which notes, "[b]ased on a cursory review, it appears that Mr. Hampton has made a good faith effort to comply with the Court's order and has produced a significant number of documents responsive to [the subpoenas at issue]." On January 12, 2023, the Court authorized the United States Marshals Service to release Hampton from custody, but it did not vacate the Third Contempt Order.[3]

The Court has little doubt that, if Hampton had retained his current counsel earlier, many of the hardships that Debtor, Debtor's counsel, Debtor's businesses, and Hampton himself faced in this matter would have been greatly ameliorated or even entirely avoided. However, the Orders fulfilled their purpose, as Hampton secured counsel and provided Debtor's counsel with the documents requested. Hampton's neglect was indeed excusable, but, because Hampton is time-barred from seeking relief as to the First Contempt Order and Judgment and the Second Contempt Order and Judgment, the relief the Court can offer is limited to vacation of the Third Contempt Order. Therefore,

IT IS ORDERED that the Motion is **DENIED IN PART** and **GRANTED IN PART**. The Court vacates the Third Contempt Order, which includes the Court's order

---

[3] Hampton also seeks relief pursuant to Rule 60(b)(5), which provides relief from orders and judgments that have prospective effects. Hampton argues that "[t]he coercive purpose of civil contempt operates prospectively." Motion at 18. But Rule 60(b)(5) "applies only to judgments that have prospective effect as contrasted with those that offer a present remedy for a past wrong." *Griffin v. Sec'y, Fla. Dep't of Corr.*, 787 F.3d 1086, 1091 (11th Cir. 2015) (internal quotations and citations omitted). The imposed sanctions were prospective when the Court entered the orders. Now they represent remedies for past wrongs, as they accrued as Hampton failed to comply. Further, according to Mr. Klehr's Affidavit, it appears that Hampton has complied. Thus, no sanctions are accruing, and Hampton's request to the extent any aspect of the First and Second Orders were prospective is moot.

10

directing the United States Marshals Service to apprehend and incarcerate Hampton.

## END OF DOCUMENT

**Distribution List**

Keith R Carringer
156 Sisson Ave., NE
Atlanta, GA 30317

Anna Mari Humnicky
Small Herrin, LLP
100 Galleria Parkway
Suite 350
Atlanta, GA 30339

Benjamin S. Klehr
Small Herrin, LLP
100 Galleria Parkway
Suite 350
Atlanta, GA 30339

Todd Eugene Hennings
Chapter 11 Subchapter V Trustee
Macey, Wilensky & Hennings, LLP
5500 Interstate North Parkway, Suite 435
Sandy Springs, GA 30328

United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Steve Hampton
1227 Amanda Circle
Decatur, GA 30033

Angelyn M. Wright

The Wright Law Alliance, P.C.
Suite 222, 1244 Clairmont Road
P. O. Box 3576
Decatur, GA 30031